UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EMIGRANT MORTGAGE COMPANY, INC.,<br>  Plaintiff,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY CORP., et al.<br>  Defendants. | No. 3:16-cv-429 (SRU) |

**ORDER**

On November 6, 2019, I held a hearing in damages in this case in which the plaintiff, Emigrant Mortgage Company, Inc. ("Emigrant"), presented evidence and argued that it was entitled to $498,797.57 in damages against John Matava ("Matava"), the only remaining defendant in this action. Matava, against whom I entered a default judgment in September 2019, did not appear. I took the matter under advisement, and I now order that Emigrant is entitled to $492,682.57 in damages against Matava.

**I. Background**

 A. <u>Factual Background</u>

This case concerns the fate of a property located at 9 George Drive, Vernon, Connecticut (the "Property"). *See* Second Am. Compl., Doc. No. 140, at ¶ 6. On April 25, 2008, Matava secured a loan to help him purchase the Property. That day, Matava (along with Jennifer Matava) executed an adjustable rate promissory note (the "Note") with Emigrant that set forth the terms under which Matava would have to repay a $120,000 loan from Emigrant. *See* Pl.'s Ex. 1. Matava also secured the Note by executing an open-end mortgage deed (the "Mortgage"). Pl.'s Ex. 2. Emigrant was the servicer of the loan for the entire length of the loan. *See* Second

Am. Compl., Doc. No. 140, at ¶ 16.  The Mortgage required Matava to obtain insurance.  *See* Mortgage, Pl.'s Ex. 2, at ¶ 5.

On April 4, 2014, the Property suffered a major fire loss, which required the Property to be demolished.  *See* Second Am. Compl., Doc. No. 140, at ¶¶ 14–15.  At the time of the fire, Matava had a homeowners' insurance policy (the "Policy") with The Travelers Home and Marine Insurance Company ("Travelers").  *See* Pl.'s Ex. 3.  The Policy covered the period from June 12, 2013 to June 12, 2014.  *See id.* at 1.  The Policy listed Emigrant as the Mortgagee.  *See id.*  The Policy also explained that "[i]f a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear."  *Id.* at 31.  Coverage A is property coverage for dwellings, and Coverage B is property coverage for "other structures."  *See id.* at 18.  Thus, "Emigrant, as the named Mortgagee on the . . . Policy, has a protected interest under the Policy up to the extent of the insurance coverage limits."  *See* Second Am. Compl., Doc. No. 140, at ¶ 12.

After the Property was destroyed and demolished, Matava defaulted on the Mortgage loan; Retained Realty, Inc. ("Retained"), the assignee, foreclosed on the Property on January 25, 2016.  *See id.* at ¶ 17.  At the sale, Retained became the title owner of the Property and Matava lost all interest he had in it.  *See id.* at ¶ 18.

Emigrant has not received the funds that it believes it is due under the Mortgage, Note, and Policy.  In particular, on July 14, 2014, Travelers issued a check for $207,007.16 (the "Check") made payable to three payees: (1) United Adjusters (a public insurance adjuster), (2) Emigrant, and (3) Matava.  *See* Pl.'s Ex. 4.  On or about September 28, 2014, Matava deposited the Check into his bank account at Citizens Bank, another defendant in this case.  *See* Second Am. Compl., Doc. No. 140, at ¶ 24.  Emigrant neither received nor endorsed the check.  *See id.*

2

at ¶ 22. United Adjusters did receive and endorse the check. *See id.* at ¶ 23. Citizens Bank erroneously negotiated the check with only one endorsement. *See id.* at ¶ 25. Matava "kept the funds for himself to the detriment of" Emigrant. *See id.* at ¶ 26.

B.     Procedural Background

In March 2016, Emigrant filed its initial complaint against Travelers. *See* Compl., Doc. No. 1, at 1. Emigrant subsequently made a motion to join Citizens Bank, N.A. and Matava as defendants, and I granted that motion in August 2016. *See* Order, Doc. No. 31. In October 2016, Emigrant filed an amended complaint against Travelers, Citizens Bank, N.A., and Matava. *See* Am. Compl., Doc. No. 32. Travelers and Citizens Bank were dismissed from this action (and their counterclaims were dismissed, too) in January 2018 because the parties reported that they had settled. *See* Joint Mot. for Dismissal, Doc. No. 106, at 1; Order, Doc. No. 108. Thus, since January 2018, the only remaining defendant has been Matava.

Matava was served with process in November 2016. *See* Executed Summons, Doc. No. 43. He appeared, *pro se*, in December 2016. *See* Appearance, Doc. No. 47. But he did not respond to the amended complaint. In February 2017, Emigrant moved for entry of default against Matava. *See* Mot. for Default Entry, Doc. No. 57. In March 2017, default was entered. *See* Order, Doc. No. 58. In July 2017, Matava filed a request to have documents sent to him by mail and represented that he had not received the amended complaint. *See* Motion, Doc. No. 88. I granted that Motion and instructed Matava to respond to the amended complaint within 21 days of receiving it. *See* Order, Doc. No. 89. In December 2017, Emigrant moved for another default entry against Matava because Matava had not filed anything on the docket since July. *See* Mot. for Default Entry, Doc. No. 107. That motion for default entry was granted in January 2018. *See* Order, Doc. No. 111. Emigrant moved for a default judgment against Matava on February 9,

2018. Mot. for Default J., Doc. No. 112. I granted that motion on July 2, 2018. *See* Order, Doc. No. 113.

On September 5, 2018, Matava reappeared. *See* Mot. for Leave, Doc. No. 120. Matava subsequently made a motion to reopen the default judgment against him, *see* Mot. to Reopen, Doc. No. 122, which I granted on December 13, 2018, *see* Order, Doc. No. 125. Nothing happened for the next five months. On April 12, 2019, Emigrant again moved for an entry of default against Matava. *See* Mot. for Default, Doc. No. 126. I granted that motion on July 12, 2019. *See* Order, Doc. No. 128. On August 6, 2019, Emigrant moved for a default judgment against Matava, *see* Mot. for Default J., Doc. No. 131, which I granted on September 26, 2019, *see* Order, Doc. No. 132.

On November 6, 2019, I held a hearing in damages at which Emigrant offered evidence that it was entitled to $498,797.57 in damages from Matava. *See* Min. Entry, Doc. No. 136. I expressed hesitation at the damages hearing that Emigrant had pled an adequate basis to recover any attorneys' fees, but I allowed Emigrant to submit a second amended complaint to conform to the proof, which it did on November 12, 2019. *See* Second Am. Compl., Doc. No. 140. Matava has not filed any response to the second amended complaint.

## II. Standard of Review

Upon entry of a default judgment, a defendant is deemed to have admitted all the well-pleaded allegations raised in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "A default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, conclusively determines the liability of a defendant." *Schwartz v. Milazzo*, 84 Conn. App.

4

175, 178 (2004) (internal quotation marks omitted) (quoting *LaRosa v. Kline*, 36 Conn. App. 501, 503–04 (1995)).

Damages, though, "usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *See Greyhound*, 973 F.2d at 158; *see also* Fed. R. Civ. P. 55(b)(2). The plaintiff is "'entitled to all reasonable inferences' from the evidence it offers." *Nationstar Mortg. LLC v. McCarthy*, 2019 WL 5694333, at *4 (E.D.N.Y. July 26, 2019) (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). That is, the district court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

### III. Discussion

#### A. Facts underlying liability

Upon entry of a default judgment, a defendant is deemed to have admitted all the well-pleaded allegations raised in the complaint pertaining to liability. *See Greyhound*, 973 F.2d at 158. Here, Emigrant asserts three causes of action against Matava: (1) common law conversion; (2) statutory theft; and (3) breach of contract.

##### 1. Common Law Conversion

"Conversion is an unauthorized assumption and exercise of the right of ownership over property belonging to another, to the exclusion of the owner's rights." *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284 Conn. 408, 418 (2007). "The intent required for a conversion is merely an intent to exercise dominion or control over an item even if one reasonably believes that the item is one's own." *Yaneczki v. Moeckel*, 2013 WL 5496458, at *6 (Conn. Super. Ct. Sept. 10, 2013) (quoting *Plikus v. Plikus*, 26 Conn. App. 174, 180 (1991)). "The plaintiff's

burden to prove conversion is by a fair preponderance of the evidence." *See id.* A prima facie case of conversion requires a plaintiff to show that (1) the material at issue belonged to the plaintiff; (2) the defendant deprived the plaintiff of that material for an indefinite period; (3) the defendant's conduct was unauthorized; and (4) the defendant's conduct harmed the plaintiff. *See id.* (citing *Coster v. DuQuette*, 119 Conn. App. 827, 832 (2010)). Money "can clearly be subject to conversion." *See Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 771 (2006).

Matava committed common law conversion. The insurance proceeds at issue—the Check—belonged to Emigrant pursuant to the terms of the Policy and the Mortgage. Any loss to a dwelling that was payable under the Policy was to be paid "to the mortgagee and" the policyholder, "as interests appear." Policy, Pl.'s Ex. 3, at 31. The Mortgage, in turn, explained that in the event of loss—and when restoration or repair was not economically feasible—"the insurance proceeds shall be applied to the sums secured by this Security Instrument." *See* Mortgage, Pl.'s Ex. 2, at ¶ 5. Here, restoration and repair was not economically feasible because the Property was demolished before the insurance proceeds were obtained. *See* Second Am. Compl., Doc. No. 140, at ¶ 15. Moreover, under the Mortgage, "[f]ees for public adjusters . . . retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower." Mortgage, Pl.'s Ex. 5, at ¶ 5. Thus, Emigrant was entitled to the full amount of the Check.

Matava deprived Emigrant of that amount: Matava received the Check, which was made payable to him, Emigrant, and United Adjusters. *See* Check, Pl.'s Ex. 4. Matava never notified Emigrant about the Check even though the Policy and the Mortgage obligated Matava to do so. *See* Second Am. Compl., Doc. No. 140, at ¶ 21. Without authorization, Matava deposited the Check into his bank account. *See id.* at ¶ 24. Matava no longer has those proceeds. *See* Def.'s

Obj. in State Foreclosure Action, Pl.'s Ex. 5. Emigrant was harmed by Matava's action because it never received the insurance proceeds to which it was entitled.

2. Statutory Theft

Under Conn. Gen. Stat. § 52-564 ("section 52-564"), "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Statutory theft is "synonymous with larceny [as defined in] General Statutes § 53a-119." *Stuart v. Stuart*, 297 Conn. 26, 41 (2010). Liability for statutory theft requires the same elements as conversion plus "an element over and above . . . , namely, that the defendant intentionally deprived the complaining party of his or her property." *Mystic Color Lab*, 284 Conn. at 418–19. "[M]oney can be the subject of statutory theft." *Deming*, 279 Conn. at 771. The plaintiff's standard of proof for statutory theft is a preponderance of the evidence. *See Stuart*, 297 Conn. at 44.

It is more probable than not that Matava intentionally deprived Emigrant of the insurance proceeds. First, Matava has a pending case against him for larceny in the first degree, a specific intent crime, for his role in this case. *See* Conn. Gen. Stat. § 53a-122; *State of Conn. v. Matava*, Docket No.: TTD-CR18-0112079-T.[1] Second, Matava's conduct here indicates intent. Specifically, Matava signed the Mortgage and took out the Policy; he knew his obligations under those contracts. In addition, as a matter of common sense, when Matava received the Check, he must have seen that it had three payees. But Matava did not alert Emigrant that he was in possession of the insurance proceeds. Matava is liable for statutory theft.

3. Breach of Contract

---

[1] According to the State of Connecticut's Judicial Branch website, Matava was arrested on this charge on March 21, 2018 and his next court date is February 13, 2020. *See* Pending Case Detail, https://www.jud2.ct.gov/crdockets/DocketNoEntry.aspx?source=Pend (last accessed Feb. 7, 2020).

In Connecticut, "[t]he elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party[,] and damages." *United Rentals, Inc. v. Price*, 473 F. Supp. 2d 342, 346 (D. Conn. 2007) (citing *Chiulli v. Zola*, 97 Conn. App. 699, 706 (2006)).

Matava is plainly liable for breach of contract here. As described above, the Mortgage instructed that—if restoration or repair was not economically feasible—any insurance proceeds would "be applied to the sums secured by this Security Instrument." *See* Mortgage, Pl.'s Ex. 2, at ¶ 5. Those "sums" were, of course, the $120,000 loan. Matava did not use the insurance proceeds to pay back that loan, but instead deposited them into his bank account. Thus, Matava breached the Mortgage.

B. Emigrant's Calculation

Emigrant seeks $498,797.57 in damages for the following reasons. *See* Calculation of Damages, Pl.'s Ex. 8. The Check was in the amount of $207,007.16. Emigrant saw none of that money, and it was entitled to all of it. *See* Mortgage, Pl.'s Ex. 2, at ¶ 5. Because statutory theft provides for treble damages, Emigrant trebles the Check's amount and reaches $621,021.48. From that amount, Emigrant adds and subtracts various amounts. It adds the difference ($19,718.59) between the Check and a supplemental judgment granted on January 8, 2016 in a state court action for post-judgment foreclosure. *See* Suppl. J., Pl.'s Ex. 6. Emigrant also adds attorneys' fees in the amount of $70,182.50, which includes fees from this matter ($56,942.50), Matava's parallel criminal larceny case ($5,970), and the post-judgment foreclosure action ($7,270). *See* Calculation of Damages, Pl.'s Ex. 8. Emigrant subtracts the amount of a settlement with Matava's co-defendants ($164,000); the sale price of the Property at its

8

foreclosure sale ($41,250); and, as obliged by statute,[2] one-half of the difference between the Property's sale price and the appraisal price ($6,875). *See id.*

For the reasons that follow, Emigrant is entitled to all that it seeks with the exception of some of the attorneys' fees.

C. Trebling

The first question is whether Emigrant is entitled to treble the Check's amount *before* deducting the co-defendants' settlement amount. Although Connecticut law is not entirely on point, Connecticut law and other jurisdictions' law in analogous contexts convince me that Emigrant is entitled to treble its damages before deducting the co-defendants' settlement amount.

Surprisingly, no caselaw in Connecticut (of which I am aware) discusses the effect of a co-defendant's settlement amount on the trebling of a statutory theft award. In the normal course, courts in Connecticut seem to apply section 52-564's treble damages clause summarily to treble the amount of a plaintiff's harm. *See, e.g.*, *Fernwood Realty, LLC v. AeroCision, LLC*, 166 Conn. App. 345, 351 n.13 (2016) (awarding plaintiff three times the replacement cost of missing electrical components); *Conn. Light & Power Co. v. Dickens*, 2016 WL 402128, at *1, *5 (Conn. Super. Ct. Jan. 8, 2016) (awarding plaintiff three times its "total loss" and "actual damages"); *Walsky v. Walsh*, 2019 WL 3220396, at *3–4 (Conn. Super. Ct. June 18, 2019) (awarding plaintiffs three times the amount paid to non-performing defendant); *Odell v. Wallingford Mun. Federal Credit Union*, 2013 WL 4734783, at *8 (Conn. Super. Ct. Aug. 8, 2013) (awarding plaintiff three times "the amount taken by the defendant"); *Jalbert v. Mulligan*, 2013 WL 5394146, at *4 n.2 (Conn. Super. Ct. Aug. 29, 2013) (trebling the plaintiffs' "actual

---

[2] *See* Conn. Gen. Stat. § 49-28 (disallowing collection of debt when the property has sold for less than the appraisal price "until one-half of the difference between the appraised value and the selling price has been credited upon the debt or debts as of the date of sale").

9

damages"). Applying the logic from those cases here, Emigrant is entitled to triple the amount of its harm, which was the amount of the Check ($207,007.16).

In one Connecticut case, the court appeared to deduct a small amount from the plaintiffs' harm before trebling. *Montano v. Anastasio*, 2004 WL 1488701, at *3 (Conn. Super. Ct. June 15, 2004). In *Montano*, a thief broke into the plaintiffs' home and stole $101,380.65 worth of personal property. The plaintiffs sought treble damages under section 52-564 for three times that amount. The court granted treble damages, but first deducted $8,995, which was the "value of the items that were returned to the plaintiff." *See id.* The court in *Montano* did not explain its reasoning; for that reason alone, *Montano* is of limited import. In addition, *Montano* is different from this case because *Montano* involved a single defendant, theft of physical, personal property, and the return of some of that very property. In contrast, this case involves multiple defendants, theft of money in the form of insurance proceeds, and the settlement of two co-defendants. Those differences make *Montano* even less instructive.

Moreover, trebling damages before deducting defendants' settlement amounts is consistent with how courts calculate treble damages in other statutory schemes with punitive damage provisions, under both Connecticut and federal law. For instance, Connecticut allows for "double damages" or "treble damages" against one who brings a groundless or vexatious suit (or defends a suit in a groundless or vexatious way). *See* Conn. Gen. Stat. § 52-568. Under that statute, on-point precedent suggests that a defendant's settlement amount should be deducted only *after* the doubling or trebling of damages under the statute. *See Verspyck v. Franco*, 92 Conn. App. 253, 259 (2005). Under federal law—in both the antitrust and RICO contexts—on-point precedent mandates that a co-defendant's settlement amount should be deducted from a plaintiff's loss *after* the plaintiff's loss has been trebled. *See, e.g.*, *Hydrolevel Corp. v. Am. Soc.*

10

*of Mech. Eng'rs, Inc.*, 635 F.2d 118, 130 (2d Cir. 1980) (holding, in antitrust context, that "[t]he district court should first treble the amount of the jury's verdict and then subtract the $800,000 already paid in settlements"); *Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 894 (2d Cir. 1988) (remarking, in antitrust context, that "an amount recovered by a plaintiff from a coconspirator in settlement of the former's antitrust claims may be deducted from the plaintiff's damage award after it has been trebled"); *Flintkote Co. v. Lysfjord*, 246 F.2d 368, 398 (9th Cir. 1957) (explaining, in antitrust context, that any other process would leave plaintiffs without "the whole to which they were entitled"); *State Farm Mut. Auto Ins. Co. v. Kalika*, 2007 WL 4326920, at *9 (E.D.N.Y. Dec. 7, 2007) (citing cases and explaining that, in RICO context, "setting-off damages *after* trebling is more likely to effectuate the purposes behind RICO").

Section 52-564 is extremely short—"Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages"—and gives no explanation for its provisions. There is also no available legislative history (of which I am aware) that sheds light on the purpose behind section 52-564's treble damages provision. *Cf. Stuart*, 297 Conn. at 37. Common sense—and courts' treatment of treble damages provisions in other contexts—suggests that a major purpose of section 52-564 is to make the plaintiff whole. Accordingly, I find that the Check—the insurance proceeds to which Emigrant is entitled in full—should be trebled *before* the settlement amount is deducted.

D. Attorneys' Fees

"In Connecticut, a prevailing party may recover attorney's fees if such an award is authorized by either statute or contract." *Neiditz v. Housing Auth. of City of Hartford*, 42 Conn. App. 409, 413 (1996) (citing *Gionfriddo v. Avis Rent-A-Car Sys., Inc.*, 192 Conn. 280, 297 (1984)). If a contract does not mention "reasonableness" with respect to attorneys' fees, the

11

aggrieved party is entitled to "recovery upon the presentation of an attorney's bill, so long as that bill is not unreasonable upon its face and has not been shown to be unreasonable by countervailing evidence or by the exercise of the trier's own expert judgment." *Storm Assocs., Inc. v. Baumgold*, 186 Conn. 237, 245–46 (1982). Here, Emigrant seeks attorneys' fees on a breach of contract theory.[3] Emigrant explains that the Mortgage provides for the collection of attorneys' fees in the event of a default upon the terms and conditions of the Mortgage. *See* Second Am. Compl., Doc. No. 140, at ¶ 86. Paragraph 14 of the Mortgage explains:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees . . . .

And Paragraph 9 explains, in relevant part:

> If (a) Borrower failed to perform the covenants and agreements contained in this Security Instrument; (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under the Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for *whatever is reasonable and appropriate* to protect Lender's interest in the Property and rights under this Security Instrument . . . . Lender's actions can include, but are not limited to: . . . (b) *appearing in court*; and (c) *paying reasonable attorneys' fees* to protect its interest in the Property and/or rights under this Security Instrument. . . . Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(emphasis added). Those two paragraphs allow Emigrant to recover attorneys' fees.

---

[3] At the hearing in damages, I allowed Emigrant leave to amend its pleading to conform to the evidence. Emigrant then filed an amended complaint asserting a breach of contract claim against Matava. *See* Second Am. Compl., Doc. No. 140, at ¶¶ 72–96.

Emigrant claims that it is entitled to $56,942.50 in attorneys' fees related to this matter. I hold that Emigrant is entitled to some legal fees related to this matter under the terms of the Mortgage because those legal fees are, in part, for "services performed in connection with Borrower's default," and the need for the fees arose because of Matava's failure to perform under the Mortgage. *See* Mortgage, Pl.'s Ex. 2, at ¶¶ 9, 14. Although Paragraph 9 of the Mortgage does not require the fees incurred to be "reasonable," Paragraph 14 explicitly does, and, in any event, I review any claim for attorneys' fees arising from a breach of contract for unreasonableness either on its face or in my own judgment. *See Storm Assocs.*, 186 Conn. at 245–46. Emigrant comes to the sum of $56,942.50 as follows:

| Person | Job | Rate | Hours | Total |
|---|---|---|---|---|
| Taryn D. Martin | Attorney | $300 per hour | 184.05 | $55,215.00 |
| Robert A. Ziegler | Attorney | $350 per hour | 3.45 | $1,207.50 |
| Paralegal | Paralegal | $200 per hour | 1.35[4] | $270 |
| "RLM" | Juris Doctorate Assistant | $200 per hour | 1.25 | $250 |

After carefully reviewing the attorneys' fees affidavit submitted at the hearing in damages (Pl.'s Ex. 9), I find that the attorneys' fees are reasonable with respect to the two attorneys both in rate and hours worked. However, I find that the rates charged for paralegal work and the juris doctorate assistant are excessive. I have remarked elsewhere that paralegal fees "can be as low as $30 per hour, but experienced or specialized paralegals can command well over $100 per hour." *See Conn. State Dep't of Social Services v. Thompson*, 289 F. Supp. 2d 198, 206 (D. Conn. 2003), *rev'd on other grounds, Santiago v. Leavitt*, 153 F. App'x 18 (2d Cir. 2005). I am aware of paralegal awards in the district of $150 per hour, but none as high as $200. *See Negron v. Patriot Auto Sales, LLC*, 2019 WL 4463440, at *5 (D. Conn. Sept. 17, 2019);

---

[4] I believe that Emigrant has miscounted; the itemized entries in the Affidavit of Attorneys' Fees indicates that the paralegal performed 2.25 hours of work. *See* Pl.'s Ex. 9 (introduced but not in evidence). However, I will adopt Emigrant's representation of 1.35 hours.

13

*Alexis v. PMM Enters. LLC*, 2018 WL 5456491, at *7 (D. Conn. Oct. 29, 2018). Here, there is no indication that the paralegal was "senior" or that the paralegal performed duties requiring expertise: the paralegal (a) sent an email, (b) reviewed research, (c) filed a motion and sent a hard copy to Matava, and (d) prepared an exhibit binder for the hearing in damages. I thus find that a rate of $200 per hour is excessive under the circumstances and that a rate of $100 per hour is more appropriate. Paralegal fees on this matter as requested by Emigrant are reduced by half.

Similarly for the juris doctorate assistant. I am unaware of exactly what a juris doctorate assistant does. The itemized Affidavit of Attorneys' Fees indicates that the assistant (a) researched joinder, (b) reviewed a check, and (c) executed a stipulation motion and circulated it. Without more information on what a juris doctorate assistant does, I find these duties to be similar to a paralegal's and so will also halve Emigrant's request with respect to the juris doctorate assistant. Thus, Emigrant is entitled to attorneys' fees of $56,682.50 for its legal work in this matter.

Regarding Emigrant's requests on the two state court actions—the parallel criminal matter and the post-judgment foreclosure—I believe that Emigrant's claims to attorneys' fees are more tenuous. If Emigrant had *itself* been forced to initiate or defend against further proceedings arising from Matava's non-performance and default under the Mortgage, Emigrant would have a good claim to attorneys' fees. *See, e.g.*, *Chicago Title Ins. Co. v. Accurate Title Searches, Inc.*, 173 Conn. App. 463, 497–98 (2017) (allowing plaintiff to recover attorneys' fees incurred in settlement negotiations with third parties distinct from the present case); E.R. Soeffing, Annotation, *Attorneys' fees incurred in litigation with third person as damages in action for breach of contract*, 4 A.L.R.3d 270 (1965) ("[G]enerally [] a party has the right to recover as damages attorneys' fees incurred in earlier litigation with a third person in which he became

involved as a result of breach of contract by his present adversary."); Robert L. Rossi, Annotation, *Fees incurred in litigation against third persons resulting from defendant's wrongful act*, 1 Attorneys' Fees § 8:3 (3d ed. 2019) ("It is generally held that where the wrongful act of the defendant has involved the plaintiff in litigation with others, or placed the plaintiff in such relation with others as makes it necessary to incur expense to protect his or her interest, such expenses, including attorneys' fees, should be treated as the legal consequence of the original wrongful act, and may be recovered as damages."). However, here, Emigrant seeks to recover for its role in actions in which it is *not* a party. Under the Mortgage, Emigrant arguably can still recover attorneys' fees incurred in those cases because Emigrant is entitled to reasonable attorneys' fees for protecting its interest in "a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under the Security Instrument." Mortgage, Pl.'s Ex. 2, at ¶ 9. I believe that Emigrant is entitled to some attorneys' fees for its involvement in those two matters.

As to the post-judgment foreclosure action, Emigrant requests $7,270, broken down as follows:

| Person | Job | Rate | Hours | Total |
| --- | --- | --- | --- | --- |
| Taryn D. Martin | Attorney | $300 per hour | 17.6 | $5,280 |
| Robert A. Ziegler | Attorney | $350 per hour | 4.4 | $1,540 |
| Paralegal | Paralegal | $200 per hour | 2.25 | $450 |

The four largest items logged for this foreclosure action all include either Attorney Martin (8.1 hours) or Attorney Ziegler (3.4 hours) traveling to and attending a hearing either in Rockville or Hartford. I will not award attorneys' fees for those items because I do not understand how attending hearings involving a separate plaintiff—that itself had an interest in recovering from Matava—was reasonable. Again, I find that the paralegal rate should be halved. In sum, Emigrant is entitled to $3,425 for its role in the post-judgment foreclosure action.

As to the criminal matter, Emigrant requests $5,970, broken down as follows:

| Person | Job | Rate | Hours | Total |
|---|---|---|---|---|
| Taryn D. Martin | Attorney | $300 per hour | 3 | $900 |
| Robert A. Ziegler | Attorney | $350 per hour | 14 | $4,900 |
| Paralegal | Paralegal | $200 per hour | .85 | $170 |

Emigrant did incur some reasonable legal fees in protecting its interest in the state criminal matter when, for instance, Emigrant had to respond to a subpoena from Matava's lawyer. Again, though, the two largest items logged for this action are Attorney Ziegler's traveling to and attending court proceedings in Rockville (5.5 hours). I will not award attorneys' fees for those items because I do not understand how traveling to and attending criminal court proceedings was reasonably related to protecting Emigrant's interests. Deducting those items and half of the paralegal's fees, Emigrant is entitled to $3,960. Thus, in total, Emigrant is entitled to $64,067.50 in attorneys' fees for Matava's breach of contract.

## IV. Conclusion

As the foregoing illustrates, Emigrant is entitled to damages of $492,682.57. The Clerk shall enter judgment and close the file.

So ordered.

Dated at Bridgeport, Connecticut, this 10th day of February 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge